THE STATE *ex rel.* SANDERS V. BLAKEMORE.

DIVISION ONE.

1. **Office, Resignation of.** An officer has the right to resign his office.

2. **Clerk of Court:** SUSPENSION: RESIGNATION: APPOINTMENT BY GOVERNOR. Revised Statutes of 1879, section 630, provides that a court may suspend its clerk for misdemeanor in office until a trial can be had, and may appoint a temporary clerk who "shall continue in office until the regular clerk shall resume his office or a successor shall be elected." Section 615 provides that when any vacancy shall occur in the office of any clerk of a court of record by death, resignation, removal or otherwise, the governor shall appoint some eligible person, who shall discharge the duties of the office until the next general election, at which time a clerk shall be chosen for the remainder of the term. *Held* that after the appointment of a temporary clerk by the court the resignation of the suspended clerk did not create a vacancy to be filled by the governor.

*Quo Warranto.*

WRIT OF OUSTER DENIED.

*John M. Wood,* Attorney General, and *Hough & Hough* for relator.

(1) The right to resign an office is universally recognized; the only doubt ever existing in the matter was as to the necessity of acceptance by the appointing power, to make the resignation complete. Const., art. 14, sec. 4. In this case, there are both the resignation and acceptance. (2) The suspension of Bragg created no vacancy in the office of circuit clerk, and no act of the circuit court short of a removal could create a vacancy within the meaning of the law. Bragg's removal, if he had been tried and convicted, would have created a vacancy. R. S. 1879, secs. 615, 3337. But

neither Blakemore's death, nor suspension, nor removal, would have created a vacancy. Bragg, therefore, was the real clerk in the eyes of the law, although temporarily divested of his functions; he alone had the commission of the governor. His death or removal could create a vacancy under section 615, *supra*. Why then could not his resignation create a vacancy? Construing the two sections, 615 and 630, together, as they must be construed, the temporary clerk will perform the duties of the office until the regular clerk resumes his duties, or until his successor is elected, unless, in the meantime, the regular clerk should die, resign or be removed; in which event the governor has authority, by section 615 (1964) to appoint his successor. (See the opinion of THOMPSON, J., in *State ex rel. Sanders v. Blakemore*, 40 Mo. App. 406.) (3) But it may be urged that Bragg could not resign, because his resignation would prevent the court, in the event of conviction, from imposing the penalty prescribed by law, a part of which is removal from office. We answer, that the jurisdiction of the court would not be ousted by his resignation, and a fine could still be imposed upon him, and perhaps a judgment of removal could be rendered, though the latter would be unnecessary. Opinion of Senators Frelinghuysen and Ingalls and Edmunds in the *Belknap Case*, 7 Congressional Records, part 7; 24 Meyers' Federal Decisions, title "officers," bottom page 117; *The Bark Laurens*, U. S. District Court of New York, where this question is expressly adjudicated. Precisely the same result would follow, and the same imaginary difficulty would arise, in the case where the term of office should expire before the trial and conviction of the alleged delinquent. The court would not be ousted of its jurisdiction either by reason of the resignation of the officer or the expiration of the term of office. This was expressly decided in *Hunter v. Chandler*, 45 Mo. 452. (4) Bragg, the regular clerk, having resigned, and his resignation having been accepted by

The State ex rel. Sanders v. Blakemore.

the governor, and the governor having appointed and commissioned the relator, Sanders, to fill the vacancy occasioned by the resignation of Bragg, and Sanders having qualified as required by law, and demanded possession of the office, Blakemore was not thereafter entitled to hold the same, and the demurrer should be sustained, and judgment of ouster should be rendered against the respondent. High on Ex. Rem. [Ed. 1884] sec. 754; *Hunter v. Chandler*, 45 Mo. 452.

*James Carr* and *J. A. Carr* for respondent.

(1) Bragg, the regular clerk, could not resign the office in question while he was suspended from the performance of the duties thereof on charges of misdemeanor in office. R. S. 1879, sec. 630; *Hunter v. Chandler*, 45 Mo. 455; *Edwards v. United States*, 103 U. S. 471; *Thompson v. United States*, 103 U. S. 480; *Groves v. Slaughter*, 15 Pet. 449; *United States v. Bevans*, 3 Wheat. 336; *Railroad v. Buchanan Co.*, 39 Mo. 485. (2) If it shall be held that he could resign, then his resignation while suspended as aforesaid did not create a vacancy in said office, so as to authorize the governor to appoint the relator to fill such vacancy, notwithstanding the respondent was at the time of said appointment legally in the office performing all the duties thereof. R. S. 1879, sec. 630; *State, etc., v. Police Commissioners*, 14 Mo. App. 297; s. c., 88 Mo. 144; *State, etc., v. Macon County Court*, 68 Mo. 29; *State, etc., v. Harrison*, 113 Ind. 438; *Lindell v. Railroad*, 36 Mo. 583; *State ex rel. v. McAdoo*, 36 Mo. 453; *Bank v. Francklyn*, 120 U. S. 747. Appointment to office by the governor is not the same thing as an election by the qualified voters. *Speed v. Crawford*, 3 Met. (Ky.) 207; *Gosman v. State*, 106 Ind. 206.

BRACE, J.—This is an original proceeding in this court by information in the nature of *quo warranto* to oust the respondent from the office of clerk of the circuit

court of Dunklin county. The case stands on demurrer to the return to the original writ.

It appears from the return that on the fifth day of December, 1888, the judge of the circuit court of Dunklin county suspended William G. Bragg, Jr., the clerk of said court, from office, on charges of misdemeanor in office, and appointed the respondent temporary clerk of said court, who thereupon qualified and entered upon the discharge of the duties of said office and remains in possession of the same. Pending said charges, and two indictments found against Bragg by the grand jury for such misdemeanors in office, he, on the twenty-second of January following, tendered his resignation of said office to the governor, who, in entire ignorance that said charges and indictments were pending against said Bragg, accepted said resignation, and on the same day appointed the relator to said office.

The suspension of Bragg and the appointment of the respondent by the judge was by virtue of the following clause in section 630, Revised Statutes, 1879: "When any court or the judge, or a majority of them in vacation, shall believe from their own knowledge or from the information of others, on oath or affirmation, that the clerk of the court in which they preside has been guilty of a misdemeanor in office they shall give notice thereof to the attorney general or prosecuting attorney, stating the charges against such clerk and requiring him to prosecute the same; and they may suspend such clerk from office until a trial can be had, and appoint a temporary clerk, who shall possess the same qualifications, take the same oath and give like bond as other clerks, and who shall possess the same power, perform the same duties and receive the like fees as other clerks, and shall continue in office until the regular clerk shall resume his office, or a successor shall be elected." Section 635 of the same act provides that, if the clerk against whom the charges are preferred shall be found guilty thereof, he shall be removed from his

office and be fined ; and section 636 provides that, if he be acquitted, he shall be reinstated in his office. Section 614 of the same act provides that the clerks of all courts of record, except the supreme court and St. Louis court of appeals, and except as otherwise provided by law, shall be elected by the qualified voters for a term of four years.

The respondent contends that by virtue of his appointment, qualification and entering upon the discharge of the duties of said office under the provisions of this act he is entitled to remain in the discharge of the duties, and in the receipt of the emoluments thereof, until either the regular clerk, being reinstated, shall resume his office or "a successor shall be elected ;" that, as neither of these contingencies had happened, he is in lawful possession of the office, and plaintiff's action cannot be maintained.

The relator contends that Bragg, being the regular clerk of said court, had the right to resign his office and that, the governor having accepted his resignation, said office became vacant, and as by section 615 of the same act it is provided that, "When any vacancy shall occur in the office of any clerk of a court of record by death, resignation, removal, refusal to act or otherwise, it shall be the duty of the governor to fill such vacancy by appointing some eligible person to said office who shall discharge the duties thereof until the next general election, at which time a clerk shall be chosen for the remainder of the term, who shall hold his office until his successor is duly elected and qualified, unless sooner removed," the governor having appointed and commissioned relator clerk of said court, and he having duly qualified as such, he is the lawful clerk of said court and entitled to the possession of said office, its powers and emoluments.

There has never been any question in this country but that a civil officer has a right to resign his office ; he had that right at common law and it is recognized in

our constitution. The only contrariety of opinion upon the subject has been as to whether an acceptance was necessary to give it complete effect. As the resignation in this case was accepted it is not necessary to enter into that discussion. We have been able to find no case, and upon principle we can see no reason why, although suspended from the performance of the functions, he may not resign whatever right he may have in and to the office to which he holds the commission. . But by such resignation he could not avoid the consequences of any misfeasance while in office, or deprive another of any right the law may have conferred upon him in respect of such office. The resignation of Bragg and its acceptance by the governor did not *ipso facto* confer upon the latter the power to appoint the relator to the office. *A vacancy* must occur by the resignation in order to confer such power. "There is no technical nor peculiar meaning to the word 'vacant.' * * * it means empty, unoccupied, as applied to an office without an incumbent; * * * an existing office without an incumbent is vacant." *State ex rel. v. Boecker*, 56 Mo. 21 ; 7 Ind. 326 ; 7 Col. 605. "An incumbent of an office is one who is legally authorized to discharge the duties of that office." 10 Am. & Eng. Ency. 361 ; *State v. McCollister*, 11 Ohio, 46.

When Bragg resigned the relator was in possession of the office, legally authorized to discharge its duties. No vacancy occurred by such resignation, and he had the right to continue in the discharge of those duties unless the effect of the appointment of the relator made in pursuance thereof was to terminate the authority of the respondent to thereafter discharge those duties. To have this effect the relator must be the *successor elected* to that office, within the meaning of section 630, *supra ;* and this brings us to the real question in the case, which turns upon the meaning of the phrase "until a successor shall be elected," as used in that section, until which time the respondent by virtue of his

appointment is lawfully authorized to discharge the duties of the office.

The rule prescribed for the construction of all statutes in this state is "that words and phrases except technical words and phrases having a peculiar and appropriate meaning in law shall be taken in their plain, ordinary and usual sense," unless "plainly repugnant to the intent of the legislature or of the context of the same statute." R. S. 1879, sec. 3126.

It will be readily conceded that the plain, ordinary and usual sense of the phrase in question is "until some person is elected by the qualified voters to succeed." The relator contends, however, that the phrase is not to be literally construed, but the sense is "until a successor is elected *or appointed*," and that such construction is necessary in order to bring section 630, *supra*, into harmony with section 615, *supra*, of the same act, by virtue of which he claims the office in this action.

This idea is founded upon the mistaken assumption that the death, resignation or removal of the regularly commissioned clerk must in all cases, and *ipso facto*, create a vacancy which the governor is authorized by section 615 to fill. This is not true, and in fact is an assumption of the very question in dispute. While ordinarily a vacancy will be the result of such events, as we have already seen, it is not the inevitable result of them. Before either of these events occurs the office may have gone into the hands of one, who by law is entitled to hold it until a successor is elected, which is the case in hand, and in which case there is no vacancy to be filled by appointment.

It is also assumed that, a vacancy having occurred by the happening of one of these events, the governor is authorized to appoint *a successor* to the clerk who shall have resigned, died or been removed. Section 615 confers no such power on the governor; it provides for the election of a successor, and for the appointment of

some eligible person by the governor "who shall discharge the duties of the office until the next general election at which time *a clerk shall be chosen for the remainder of the term*, who shall hold his office until *his* successor is duly elected and qualified." The person *appointed* is a mere *locum tenens* until *a clerk* can be *elected* to succeed and fill out the term of the one who has resigned, died or been removed.

Section 11, article 5, of the constitution has nothing to do with the case. It is provided by the act under consideration how vacancies in the office of clerks of courts of record shall be filled. Both of the sections under consideration contemplate that the service of the office of circuit clerk is to be performed by a citizen who has been thereto duly elected for a term of years, and until his successor is elected as provided for in section 614. These sections were enacted to meet contingencies that might happen by reason of which such service could not be performed by the elected clerk until his successor should be elected; neither section undertakes to provide for the appointment of such successor but to make a temporary provision until such successor can be elected. Section 615 authorizes the governor in case of *vacancy* caused by death, resignation, removal, refusal to act or otherwise to appoint some eligible person to discharge the duties thereof until the next general election when *a clerk* is to be elected for the remainder of the term, and until his successor is elected and qualified.

Section 630 undertakes to provide for another and a different contingency, for a case *in which a vacancy has not occurred*, but in which the clerk by reason of alleged misdemeanor in office ought not to be permitted to remain in the discharge of its duties, and, therefore, is suspended by the court or the judge thereof of which he is clerk; in which case the court or judge suspending him is authorized to appoint some qualified person to discharge the duties of the office, who shall continue

in office until the regular clerk shall resume his office, or a successor shall be elected. If the regular clerk die, resign or is convicted and removed under section 635, and, therefore, cannot resume his office, then the appointee of the court shall continue in office, not until another temporary clerk is appointed by the governor, but until a successor of the clerk shall be elected. This is the plain letter of the statute. The words "elect," "appoint" and "successor" are used in both sections, and evidently, in their ordinary and usual sense in each, and when the difference in the cases provided for by the two sections is rightly considered, we do not find it necessary, in reading them together, to attach any other than the usual meaning to either of these words or the phrases in which they are used in order to render the sections harmonious; nor do we find that such sense renders these two sections repugnant to each · other or section 630 repugnant to the provisions of any other part of the act.

That the legislature mindful of their duty to guard against failure of the public service literally meant just what they said in regard to the term of office of the appointee in section 630 is supported by other considerations. The office of circuit clerk is a very important one, requiring skill and ability; he is *ex officio* recorder of deeds for his county; the duties of the office require continuous daily attention during business hours, and the law is that he personally devote his time to, and give bond for, the faithful performance of those duties.

It is obvious that, in order to obtain a suitable person to properly discharge the duties and assume the responsibility of this important branch of the public service, the inducement of as reasonable and certain a term of office as the nature of the case will admit should be offered him. Capable men usually have business of their own, requiring their attention, and it could not reasonably be expected such a man would give up his business and enter upon the discharge of

the exacting and onerous duties of this office, requiring daily his personal service, execute a reliable bond for their proper discharge, and assume the grave responsibility of such office, with a tenure thereof that might be terminated the next day, week or month, by the interest, whim or caprice of another, who according to the relator's construction of the statute could at any moment resign him out of office. The reason as well as the letter of the law is against such a construction, and there can be no doubt that the meaning of the legislature is that the appointee of the court or judge, under section 630, "shall continue in office  *  *  * until a successor shall be elected" as they have therein in plain and unmistakable language expressed it. The demurrer will be overruled and the writ denied. SHERWOOD, C. J., and BLACK, J., concur.