The Honorable Mary Slinkard State Representative
10422 Virden Lane Gravette, Arkansas 72736-9631
Dear Representative Slinkard:
You have requested my opinion on several questions concerning the local board of a community college. As background for your questions, you state:
 On December 22, 2009, Mr. Robert Teague, a member of the Northwest Arkansas Community College [NWACC] board, resigned from the board. Mr. Teague served in Position 4 of the board. On May 24, 2010, Governor Mike Beebe appointed Ms. Hadley Hindmarsh to serve the remainder of Mr. Teague's term, which expires on December 31, 2010. Ms. Hindmarsh intended to run for the same board position in the September 21, 2010, annual school election. However, there were no statements of candidacy or petitions filed for position 4 by any candidate, including Ms. Hindmarsh. Currently, there are no candidates for NWACC board position 4 on the ballot in the 2010 school election.
Against this factual background, you ask:
 1. Are write-in candidates permitted for community college board positions?
 2. Does the failure of the current appointed board member to run for reelection to position 4 on the NWACC board create a "vacancy" for purposes of Ark. Code Ann. 6-61-520(d)? *Page 2 
 3. Does Arkansas Constitution, Art. 19, 5, apply to community college board positions?
 4. If the 2010 school election does not supply an officeholder for position 4 on the NWACC board, does Ms. Hindmarsh continue to serve in position 4 in the upcoming term beginning January 1, 2011?
 5. If Ms. Hindmarsh continues to serve in position 4 during the upcoming term, is it for the entire 6 year term of the board position?
RESPONSE
In my opinion, the answer to your first question is "probably no," the answer to your second question is "no," and the answer to each of your remaining questions is "yes."
DISCUSSION
Question 1 — Are write-in candidates permitted for communitycollege board positions?
The Arkansas Supreme Court has not addressed this precise issue; but in my opinion, if faced with the question, the court would probably hold that there is no provision in the law for write-in candidates for community college board positions.
Arkansas Code Annotated § 6-61-520 deals specifically with the subject of a community college board's composition and the method of nomination and election of board members. Essentially, the candidate must pay a $3.00 ballot fee and file with the county clerk a notarized "statement of candidacy" and a petition containing no less than 50 signatures of qualified voters of the community college no later than 12:00 noon of the 70th day before the election.[1] The election is *Page 3 
nonpartisan[2] and is held at either the general election or, in certain cases, at the annual school election.[3]
Section 6-61-520 sets forth with clarity and specificity the requirements to qualify as a candidate for membership on a local community college board. There is no provision for write-in candidacy. A separate Arkansas Code section, A.C.A. § 7-5-205 (Supp. 2009), authorizes write-in candidates. But in my opinion it is unlikely that this provision applies to community college board candidates. It was originally enacted under the 1969 election code — Arkansas Code Title 7 — and as explained by the Arkansas Supreme Court:
 Act 465 of 1969 [the election code] covers generally the field of party primaries, general and special elections. It was intended to consolidate in one comprehensive code most of the laws of the State relative to such elections, and to modernize some of these laws. We do not believe that it was intended by the legislature to repeal and replace all laws of the State dealing with elections and qualification for candidacy to office. This interpretation is strengthened by the expressed purpose of the Act as set forth in the Emergency Clause, which provides: `It is hereby found and declared by the General Assembly of the State of Arkansas that the present election laws are ancient and outdated in part and have caused and are causing much confusion and controversy and that there are particular problem areas in the present law which need immediate legislation in order to resolve same . . . `[4]
In Williams, the court held that candidates for city board or municipal judge in a city with the city manager form of government are not required to file a political practices pledge because the specific statutes applicable to those candidates do not *Page 4 
require such a filing. The political practices pledge requirements under the election code (A.C.A. § 7-6-102) and under a separate act governing independent candidates (A.C.A. § 7-7-103) were both deemed inapplicable.[5]
While it is impossible to predict with certainty what the Arkansas Supreme Court would hold if faced with the question, I believe the court would likely hold that A.C.A. § 7-5-205 does not apply to community college board elections in light of the specific qualification requirements under A.C.A. § 6-61-520, which do not include write-in candidacy. Compare A.C.A. §§ 6-14-111 (Supp. 2009) (write-in candidate for school board) and 7-10-103 (Supp. 2009) (write-in candidate for nonpartisan judicial office).
In my opinion, this conclusion is further indicated by Section 7-5-205's requirement that votes for a write-in candidate will not be counted unless the candidate notifies the Secretary of State, in the case of "any state or district office," or the county clerk, in the case of "county or township office."[6] The question arises whether a position on a community college board falls within any of these categories of public office. While it seems that a community college is considered an agency or arm of the state for some purposes, [7] previous opinions of this office have concluded that a community college board position is not a state or county office.[8]
It plainly is not a township office. The remaining question is whether it is a "district" office as that term is used in section 7-5-205. This may be a closer question, given that board members are elected by community college "districts" established pursuant to Ark. Const. amend. 52.[9] But I doubt the court would find that the General Assembly had community college board positions in *Page 5 
mind when it referred to a "district office" in the 1969 election code. Although Amendment 52 predated the election code, having been proposed by initiative petition and adopted in 1964, the amendment makes no mention of officers for community college districts; and the General Assembly did not act until 1977 to provide for community college boards.[10]
In sum, it is my opinion that write-in candidates are probably not permitted for community college board positions.
Question 2 — Does the failure of the current appointed boardmember to run for reelection to position 4 on the NWACC board create a"vacancy" for purposes of Ark. Code Ann. 6-61-520(d)?
No. In my opinion, it is clear that the current appointee's apparent decision not to run for election does not create a vacancy for purposes of A.C.A. § 6-61-520(d), which states in pertinent part:
 (1) Vacancies on any local board due to death, resignation, or other causes shall be filled by appointment of the Governor.
 (2) When the term of office in which the vacancy occurs expires on December 31 of the year in which the next general or annual school election is to be held, the person appointed by the Governor shall serve the remainder of the unexpired term.
 (3) When the term of office in which the vacancy occurs extends beyond December 31 of the year in which the next general or annual school election is to be held, the person appointed by the Governor shall serve only until the general or annual school election, at which election a person shall be elected by the qualified electors of the district to fill the remainder of the unexpired term.
Under the facts you have stated, the current appointee, Ms. Hindmarsh, will serve for "the remainder of the unexpired term" pursuant to subsection 6-61-520(d)(2). The term reportedly expires December 31, 2010. This should not be taken to mean, however, that a vacancy will exist if neither she nor anyone else runs for the position in the upcoming election. I believe it is clear that this circumstance will *Page 6 
not give rise to a vacancy. Although there is no case specifically addressing A.C.A. § 6-61-520, the Arkansas Supreme Court in other contexts has adhered to the long-standing interpretation of "vacancies in office" as referring to "offices which on account of death, resignation, removal or abandonment of the previous holder thereof, or for some other cause, have in fact no incumbent."[11] An "incumbent" is "one who in present possession of an office; one who is legally authorized to discharge the duties of that office."[12] As further explained by the court:
 `A vacancy in an office may be caused by the death, resignation or removal of the official holding the office, or by the creation of a new office. Smith v. Askew, 48 Ark. 89. As a general rule, there is a vacancy in office whenever there is no incumbent to discharge the duties of the office, that is, whenever the office is empty or unfilled; but as long as there is any one authorized to discharge the duties of the office, the office is not to be deemed vacant so as to authorize the exercise of the power to fill vacancies in office. [Citations omitted.]'[13]
Of particular relevance to your particular question, my immediate predecessor observed:
 Under this interpretation of vacancy and incumbency, the failure of an incumbent to run for re-election to an office does not appear to constitute a condition of vacancy. Rather, the court's interpretation indicates that the conditions for vacancy are death, resignation, removal, or abandonment. If the holder of an office has not died, *Page 7 
resigned, been removed, or abandoned the office, that person is an incumbent and the office is not vacant.[14]
Questions 3 — Does Arkansas Constitution, Art. 19, 5, apply tocommunity college board positions?
Yes, in my opinion. Article 19, section 5 of the Arkansas Constitution provides that "[a]ll officers shall continue in office after the expiration of their official terms until their successors are elected and qualified."[15] The Arkansas Supreme Court has not addressed the precise question of whether this provision applies to community college board members. As noted by my predecessor, however:
 . . . the court has expressly acknowledged the applicability of this provision to a variety of officers, including the following positions: city alderman (Phillips v. Earngey, 321 Ark. 476, 902 S.W.2d 782 (1995)); sheriff (McCraw v. Pate, 254 Ark. 357, 494 S.W.2d 94 (1973)); county judge (McCoy v. Story, 243 Ark. 1, 417 S.W.2d 954 (1967) and Justice v. Campbell, 241 Ark. 802, 410 S.W.2d 601 (1967); justice of the peace (Faulkner v. Woodard, 203 Ark. 254, 156 S.W.2d 243 (1941); county examiner (Barnett v. Sutterfield, 129 Ark. 461, 196 S.W. 470 (1917)); constable (Bank of Almyra v. Laur, 122 Ark. 486, 184 S.W. 39 (1916); county treasurer (Hill v. Goodwin, 82 Ark. 341, 101 S.W. 752 (1907).[16]
As my predecessor further observed: "It appears both from the language of Article 19, § 5, itself and the court's application of this provision that the provision is applicable to positions held by persons who can be classified as `officers.'"[17] The Arkansas Supreme Court has noted the characteristics of an "office": *Page 8 
 A public officer ordinarily exercises some part of the State's sovereign power. His tenure of office, his compensation, and his duties are usually fixed by law. The taking of an oath of office, the receipt of a formal commission, and the giving of a bond all indicate that a public office is involved, although no single factor is ever conclusive.[18]
The position of community college board member bears many of the indicia of public office. Although the governing statutes contain no provisions regarding a bond, a salary, the taking of an oath of office or the receipt of a formal commission by a member of a community college board, the position itself, as well as its tenure and duties, are all created by law.[19] Perhaps most significantly, the board members are charged with the exercise of sovereign powers — a necessary requisite of a public office.[20] The board has the power of eminent domain and other broad authority in controlling the college, including the authority to determine whether a tax shall be levied to support the college's operation.[21] Given these statutory grants of power, I conclude that a member of a community college board qualifies as an officer. I am reinforced in this conclusion by the fact that A.C.A. § 6-61-520(c)(2) expressly refers to a board position as an "office" in requiring that a candidate must state, inter alia, that "I am a candidate for the office of position No. . . . . on the local board of such community college."
Under these circumstances, I believe community college board members qualify as "officers" for purposes of applying Ark. Const. art. 19, § 5.
Question 4 — If the 2010 school election does not supply anofficeholder for position 4 on the NWACC board, does Ms. Hindmarshcontinue to serve in position 4 in the upcoming termbeginning January 1, 2011? *Page 9 
Yes, in my opinion, pursuant to Ark. Const. art. 19, § 5, which to restate provides that "[a]ll officers shall continue in office after the expiration of their official terms until their successors are elected and qualified." The "official term" of an officer appointed to fill a vacancy is the "unexpired term" of the vacating member. Article 19, Section 5, therefore provides for the appointed officer's continued service beyond the vacating member's term, and "until [a successor is] elected and qualified."[22]
Question 5 — If Ms. Hindmarsh continues to serve in position4 during the upcoming term, is it for the entire 6 year term of theboard position?
Yes. As noted by one of my predecessors, "[a] holdover officer will serve a complete term unless the legislature implements some means to cut it short. . . ."[23] According to my review, there is no legislation authorizing mid-term challenges with respect to positions on a community college board. Accordingly, "the practical effect of holding over will be to embark on a full term."[24]
Deputy Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] A.C.A. § 6-61-520(c)(2) (Supp. 2009) (setting out the form of the "statement of candidacy") and (3) (petition requirement).
[2] Id. at (c)(1) ("Candidates for membership on the local board shall run by position and shall be elected on a nonpartisan basis, and there shall be no mark or designation on the ballot indicating the party affiliation of the candidates.").
[3] Id. at (b). The election is held at the annual school "if the community college district is composed solely of one (1) or more entire school districts, other than any portion of the school district that is in another county, and whose boundary is contiguous with that portion of the school district that is located in the county in which the community college is located." Id. at (2). I assume the latter subsection applies to the NWAAC, given your statement that Ms. Hindmarsh intended to run in the school election.
[4] Williams v. Pulaski County Election Comm'n,249 Ark. 309, 313-14, 459 S.W.2d 52 (1970).
[5] 249 Ark. at 313, 315.
[6] A.C.A. § 7-5-205(1) (Supp. 2009).
[7] See, e.g., Hadley v. North Arkansas Comm. Tech. College.,76 F.3d 1437 (8th Cir. 1996) (finding community college to be an arm of the state entitled to Eleventh Amendment immunity); Ark. Op. Att'y Gen. Nos. 89-002 (regarding eligibility for certain grants available to agencies of the state) and 86-160 (state law applicable to capital improvements).
[8] Op. Att'y Gen. Nos. 91-065 and 89-219.
[9] Amendment 52 authorizes the General Assembly to provide for the creation of community college districts. The General Assembly has authorized the Arkansas Higher Education Coordinating Board to formulate criteria for establishing community colleges, and to certify proposed community college districts. See
A.C.A. §§ 6-61-505 — 510 (Repl. 2003). A district is created if a majority of the voters in the proposed district vote in favor of establishing the community college. A.C.A. § 6-61-513 (Repl. 2003).
[10] Acts 1977, No. 560 (the "Comprehensive Post-Secondary Education Act.")
[11] Justice v. Campbell,241 Ark. 802, 804, 410 S.W.2d 601 (1967), quoting State v. Green andRock, 206 Ark. 361, 175 S.W.2d 575 (1943) (regarding the existence of a "vacancy" for purposes of the Governor's appointive authority under Ark. Const. amend. 29). See also Stafford v. Cook,159 Ark. 438, 252 S.W. 597, 599 (1923) (holding that the existence of grounds for removal does not give rise to a vacancy where the officer was initially eligible, and that "continuation in the office prevents a vacancy until he abandons the office or is removed therefrom in the manner provided by law.")
[12] Justice, 241 Ark. at 804.
[13] Id. at 805-06, quoting Rice v. Palmer,78 Ark. 432, 96 S.W. 396 (1906).
[14] Op. Att'y Gen. 2003-319 (emphasis added) (responding to the question: "Does the failure of an incumbent [school board member] to run for re-election cause a vacancy in the position held by the incumbent?")
[15] In Justice, supra, the court declared that the phrase "until their successors are elected and qualified," as appears in art. 19, § 5, "is susceptible to no other reasonable implication but that the office be filled by a vote of the people."241 Ark. at 807-08.
[16] Op. Att'y Gen. 2003-319.
[17] Id.
[18] Maddox v. State,220 Ark. 762, 763-64, 249 S.W.2d 972 (1952).
[19] Pursuant to A.C.A. § 6-61-520(a) and (b) (Supp. 2009), "[t]he local control of each community college shall be vested in a local board composed of nine (9) members who are residents and qualified electors of the community college district" and "[a]ll members shall be elected for terms of six (6) years. . . ." The board's "powers and duties" are set out in A.C.A. § 6-61-521 (Repl. 2003).
[20] See generally Bean v. Humphrey,223 Ark. 118, 264 S.W.2d 607 (1954).
[21] A.C.A. § A.C.A. § 6-61-521 and-602.
[22] Compare Op. Att'y Gen. 2006-217 (alderman appointed to fill a vacancy continues to hold office pursuant to art. 19, § 5, for the upcoming term, due to the failure of a successor to be elected and qualified.) Cf. McCraw v. Pate,254 Ark. 357, 494 S.W.2d 94 (1973) (gubernatorial county sheriff appointee appointed in December of current term after December death of sheriff-elect should continue to serve through upcoming term and until his successor was elected and qualified); Justice v. Campbell,241 Ark. 802, 410 S.W.2d 601 (1967) (incumbent county judge entitled to hold over until next scheduled general election after his defeat by a candidate who died after the election but before taking office).
[23] Op. Att'y Gen. 2000-139 (noting that "[i]n Justice v.Campbell, 241 Ark. 802, 805-07, 410 S.W.2d 601 (1967), the Supreme Court ruled that an elective office occupied by a holdover cannot be considered vacant, and that any election challenging the holdover pursuant to Ark. Const. art. [19], § 5 must first be authorized by the legislature.")
[24] Id. *Page 1